JOHN S. HALE *v.* AUGUSTUS H. BARROWS AND PHILIP EDGERTON.

The owner of land, situated upon both sides of a river, conveyed, by deed with
covenants of warranty, a part of the land, on the north side of the stream,
upon which was situated a blacksmith's shop, with a certain privilege of draw-
ing water, and immediately following the description of the land was this
clause,—" also the privilege to remove said blacksmith shop works to the op-
posite bank of the river, below the grist mill, when he thinks proper." Sub-
sequently, and after one claiming under the grantee had removed the black-
smith's shop to the place designated upon the south side of the stream, the
grantor conveyed to another person the premises upon the south side, with
this exception,—" excepting a blacksmith's shop, and such privileges of draw-
ing water, as I have heretofore deeded to " the grantee in the former deed,
naming him. *Held,* that those claiming under the grantee in the first deed had
title in fee to the land, on the south side of the stream, occupied by the
blacksmith's shop, and that their right was not affected by the removal of the
shop and the discontinuance of the business at that place.

EJECTMENT for certain land in Brandon, described as situated
upon the south side of a certain river. Plea, the general issue, and
trial by jury, April Term, 1849,—HALL, J., presiding.

On trial the plaintiff gave in evidence a deed from Salmon Farr
to Thomas G. Farr and Daniel P. Fales, dated December 15, 1837,
conveying certain premises upon the north side of the river men-
tioned in the declaration, described as being the premises upon
which " the old blacksmith's shop formerly stood," with the priv-
ilege of drawing water sufficient to carry the former works in said
blacksmith's shop, and also " the blacksmith's shop, or pocket fur-
nace, standing on the south side of said river, below the grist
mill ; "—also deeds from Thomas G. Farr to Daniel P. Fales, and
from Daniel P. Fales to the plaintiff, conveying the same premises
by the same description,—the latter deed bearing date July 2, 1841.
And the plaintiff gave evidence tending to prove, that Salmon Farr,
and those claiming under him, including the plaintiff, had occupied
a building, known as the trip hammer shop, or blacksmith's shop,
standing on the premises in question, for more than twenty years
previous to the commencement of this suit.

The defendants then gave in evidence a deed from Ebenezer
Childs to Daniel Rowley, dated December 25, 1809, conveying the

premises upon the north side of the river, specified in the deed, above mentioned, from Salmon Farr to Thomas G. Farr and Daniel P. Fales, and described as including "the blacksmith's shop and works," and containing also this clause,—"and also the privilege to remove said blacksmith's shop works to the opposite bank of the river, below the grist mill, when he thinks proper ;"—and also deeds from Rowley to Charles Johnson, from Johnson to Jesse Hinds, from Hinds to the above named Salmon Farr and John Dean, and from Dean to Salmon Farr, all conveying the same premises,—the latter deed bearing date May 19, 1817. The defendants also gave evidence tending to prove, that the building described as the blacksmith's shop &c. in the deeds introduced by the plaintiff, and occupied by Salmon Farr and his grantees, was the same with the blacksmith's shop mentioned in the deed from Childs to Rowley and the subsequent deeds; and that Salmon Farr, while he occupied it, claimed to hold it under the above deeds ; and that it was destroyed and removed in 1841 and had not been replaced.

The plaintiff then gave in evidence a deed from the said Ebenezer Childs to Stephen Avery, dated May 18, 1820, conveying the premises owned by Childs upon the south side of the river, but with this exception,—"excepting a blacksmith's shop and such privileges of drawing water, as I have heretofore deeded to Daniel Rowley, and now owned by Salmon Farr;"—also several deeds, conveying the same premises, from Avery through several intermediate grantees, to the defendants.

The defendants requested the court to charge the jury, that Rowley, and those holding under him, including the plaintiff, took, under the deeds above mentioned, only an easement, or privilege of having the blacksmith's shop stand on the premises, while it existed ; and that whatever estate, or interest, they had in the land on the south side of the stream, by virtue of said deeds, terminated, when the blacksmith's shop was destroyed and removed ; and that the plaintiff could not recover the demanded premises. But the court instructed the jury, that, under the said deeds and the evidence in the case, the plaintiff was entitled to recover.

Verdict for plaintiff. Exceptions by defendants.

*S. H. Hodges* and *S. Foot* for defendants.

The deed from Childs to Rowley amounted to nothing more than a license (whether irrevocable, or not, is immaterial) to occupy the premises, with the blacksmith's shop, while it stood; or, at most, to a conveyance of such interest in them, as was necessary for that purpose. *Jackson* v. *Babcock*, 4 Johns. 418. *King* v. *Hornden*, 4 M. & S. 565. *Harrison* v. *Parker*, 6 East 154. *Worcester* v. *Green*, 2 Pick. 425. *Stockwell* v. *Hunter*, 11 Met. 448. And see Co. Lit. 4. The word "premises," in the *habendum* and covenants, imports the interest previously conveyed; not the land. *Smith* v. *Pollard*, 19 Vt. 272. *Sumner* v. *Williams*, 8 Mass. 162.

As to the operation of the deed from Childs to Avery ;—the expression "*now owned by Salmon Farr*" must be taken together with the expression, "*as I have heretofore deeded to Daniel Rowley*," and applied exclusively to the words "such privileges of drawing water." It has no reference to the blacksmith's shop. If it had, by "blacksmith's shop" must be intended merely the building, not the land it stands on,—as that would best correspond with the actual interest of the parties. As a concession of one grantor, this was not admissible in evidence against us. *Carpenter* v. *Taylor*, 13 Vt. 552. *Hines* v. *Soule*, 14 Vt. 99. Neither could it bind the defendants by way of estoppel, for want of mutuality. Salmon Farr, who then owned the plaintiff's interest, was no party to the deed, nor in any way affected by it. Co. Lit. 277 *a*. Ib. 352. Ib. 363 *b*. 4 Com. Dig., Estoppel C. *Doe d. Brune* v. *Martyn*, 8 B. & C. 497, [15 E. C. L. 276.] *Hudson* v. *Robinson*, 4 M. & S. 475. *Gaunt* v. *Wainman*, 3 Bing. N. C. 69, [32 E. C. L. 42.] *Worcester* v. *Green*, 2 Pick. 425. *Green* v. *Clarke*, 13 Vt. 158.

Whether Farr had gained a title by possession was a question for the jury; and the court ought not to have decided it,—if, indeed, they undertook it. That his occupation could not give him a title, see 2 Phil. Ev. by Cow. & H. 365; *Roe d. Pellatt* v. *Ferrars*, 2 B. & P. 542; *Atkins* v. *Bordman*, 2 Met. 457; *Luce* v. *Carley*, 24 Wend. 451; *Zeller's Lessee* v. *Eckert et al.*, 4 How. 289.

*E. N. Briggs* and *C. L. Williams* for plaintiff.

The bill of exceptions and accompanying deeds show, that both parties derive their title from Ebenezer Childs; and the question

presented is, which has the better title from him. See *Brooks* v. *Chaplin*, 3 Vt. 281.

The defendants derived no title whatever to the land in dispute from the deed from Childs to Avery. *Allen* v. *Scott*, 21 Pick. 25. The exception of the brick factory, in that case, was in nearly the same words with that of the blacksmith shop in the deed to Avery; and it was there held, that the exception extended both to the land, upon which the factory stood, and the water privileges appurtenant. A consideration of the deed from Childs to Rowley, and of the objects evidently intended to be conveyed, can lead to no other conclusion, than that he intended to deed a site for a shop upon the south side of the stream,—for it was the *"works,"* which he might remove. The shop itself, a site for its works upon the opposite bank from where it then stood, and a privilege of water to carry its works, were prominent objects in the grant; and if the enjoyment of these by the grantee was intended to have been limited to the time, during which the building might stand, and the grantor supposed he reserved a right and expected to re-possess himself of the site and privilege, upon the destruction or decay of the building, such limitation and right could and would have been clearly expressed in the deed itself. The fact, that it was the *"blacksmith shop works,"* which Rowley might remove, shows, that his right upon the south side was not dependent upon the existence, or even removal, of the building itself. In construing a deed, the usage of the parties under it is proper to be considered. See *Livingston* v. *Ten Broeck*, 16 Johns. 14–23.

The opinion of the court was delivered by

POLAND, J. This is an action of ejectment for a small piece of land in Brandon, upon the south side of a certain stream, upon which formerly stood a blacksmith's shop. In 1809 one Ebenezer Childs was the owner of the land upon both the north and south side of said stream, and on the twenty fifth day of December, 1809, he sold and conveyed a piece of land upon the north side of the stream, upon which was a blacksmith's shop and works, and also the right to draw water from his flume above to carry said works, to Daniel Rowley. In the deed to Rowley, and immediately following the description of the premises upon the north side of the stream, was the

following clause,—"Also the privilege *to remove* said blacksmith shop works to the opposite bank of the river, below the grist mill, when he thinks proper." The plaintiff showed a regular chain of conveyances from Daniel Rowley, through various persons, to himself, of the premises described in the deed from Childs to Rowley. In May, 1820, Ebenezer Childs conveyed, upon the south side of the stream, to Stephen Avery; and immediately following the description of the premises conveyed is the following exception,—"Excepting a blacksmith's shop, and such privileges of drawing water, as I have heretofore deeded to Daniel Rowley, and now owned by Salmon Farr." The defendants show a regular line of conveyances from Stephen Avery to themselves, of the premises conveyed by Childs to Avery. It appears from the case, that at some time, previous to the date of the deed from Childs to Avery, Salmon Farr, who then owned the premises deeded by Childs to Rowley, had removed the blacksmith shop to the south side of the stream, where it remained until 1841, when it was destroyed.

The present suit is brought to recover the piece of ground on the south side of the stream, where the shop formerly stood; and the whole question depends upon the construction of the above mentioned clause in the deed from Childs to Rowley. The plaintiff contends, that, by a proper construction of that deed, Childs conveyed to Rowley a piece of land on the south side of the stream, upon which he might remove his *blacksmith shop works*, so that he became the owner thereof in fee simple. The defendants, on the other hand, insist, that the deed amounted to no more than a mere license to Rowley, to remove his blacksmith shop upon the south side of the stream, and that, when he ceased to occupy it for that purpose, he had no farther right.

The question is, of course, one of mere intent,—to be gathered from the language of the deed, the apparent object of the parties, which may, perhaps, be aided by their acts and conduct under it. From the peculiar phraseology of the deed we are inclined to believe, that it was not contemplated by the parties, that Rowley was to remove the very shop, which then stood upon the north side of the stream, unless he chose to do so; he was to remove, when he thought proper,—rather implying, that he might choose to occupy the old shop upon the north side of the stream for some time.

Again, the language of the deed, as it seems to us, gives some countenance to this idea. It does not speak simply of a removal of "the shop,"—as if they had reference to the one particular building,—but of " *his works,*"—as though they had reference rather to the business generally, and to any proper erections for its purposes. In short, we are satisfied, that the parties expected and intended, that Rowley might remove the old shop, or build a new one upon the south side, and he might build one of as permanent and durable a character, as he chose.

Under these circumstances it is hardly reasonable to believe, that the parties understood it to be a mere license, or permission, to Rowley, to occupy, Childs still remaining the owner of the land. Again, it seems to us, that if the intention of the parties had been to give a mere license for occupation, they would have introduced some words of limitation into the deed, that he should occupy so long as a particular building should stand, or so long as he should carry on the business of a blacksmith; but the deed contains no such words, but is unlimited as to time, or any other circumstance. This circumstance, taken in connection with the fact, that the deed is one conveying an estate in fee, in which this grant is found, can scarcely be reconciled with the idea, that the intent of the parties was for a mere license. Again, it seems to us, that the reservation in the subsequent deed from Childs to Avery favors the idea, that this was intended to be a fee; as the words of the reservation are such, as would naturally be used, if such were the fact;—and this, we suppose, may fairly be considered, in reference to this question, as an act of one of the parties to the conveyance, in relation to the same subject matter,—which evidence is always admissible to show intent.

Although it can hardly be said to be clear, from the deed, what the parties intended, we are all of opinion, that the most reasonable construction of the deed is, that the parties intended to convey the fee, instead of a mere license, or permission. The authorities cited by the counsel for the defendants are all cases, where, from the grants themselves, it was clear, that only a license was given; and the discussion in those cases is rather as to the effect of a license, than upon the nature of the grant.

The judgment of the county court is therefore affirmed.